[Civ. No. 38399. First Dist., Div. One. Jan. 25, 1977.]

DENISE HELLMAN, Plaintiff and Appellant, v.
GREAT AMERICAN INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Lafranchi, Bettinelli & Mickelsen, Frederic L. Hirschfield and Douglas Provencher for Plaintiff and Appellant.

Tinning & DeLap, Keith Howard and Austin Gibbons for Defendant and Respondent.

**OPINION**

**WEINBERGER, J.\***—Appellant Denise Hellman filed a declaratory relief action in the superior court seeking to recover on the medical payments coverage contained in an automobile liability insurance policy issued by respondent Great American Insurance Company (Great American) to appellant's parents. She was covered as an additional insured by reason of residency in her parents' home. This appeal is from a summary judgment entered in favor of respondent.

The undisputed facts are that appellant was injured in an automobile accident while she was riding as a passenger in a vehicle insured by United Services Automobile Association (USAA). The USAA policy

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

afforded automobile medical payments coverage in the amount of $5,000, subject to an "other insurance" clause.[1] As the result of the accident the appellant incurred medical expenses in the sum of $6,998.64 of which $5,798.64 was reimbursed by Founders Life Insurance Company (Founders) pursuant to the terms of a medical plan underwritten by said company. The trial court found that this was the full limit of Founders' liability under its policy. USAA, pursuant to the terms of its policy, paid the $1,200 unpaid loss sustained by appellant, and no claim is made that USAA has any further liability under its policy. It is conceded that USAA has not exhausted the $5,000 limit of its medical payments coverage, and respondent Great American has paid nothing under its policy.

The trial court, on competent evidence, found that the medical payments coverage in the USAA policy was written on an owned vehicle and the Great American medical payments coverage is on a nonowned vehicle, and that as between the two policies USAA is a primary policy and Great American is an excess policy.

The other insurance clause of the Great American policy provides as follows: "Other Insurance: If there is other automobile medical payments insurance against a loss covered by Part II of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or *non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance.*" (Italics added.)

It is appellant's contention that the word "collectible" in the quoted clause is ambiguous and susceptible of two interpretations. Accordingly, appellant argues that she is entitled to Great American's coverage limit of $5,000. The contention is essentially as follows.

---

[1]The other insurance clause of the USAA policy provides as follows: "Such insurance as is afforded under Automobile Medical Payments Coverage shall apply as excess insurance over any medical expense which is paid or payable to or on behalf of the injured person under the provisions of any (1) premises insurance affording benefits for medical expenses, *(2) individual, blanket or group accident, disability or hospitalization insurance,* (3) medical, surgical, hospital or funeral service, benefit or reimbursement plan or (4) workmen's compensation or disability benefits law or any similar law, or (5) other available valid and collectible automobile medical payments insurance." (Italics added.)

1. For the purpose of construing Great American's liability under its policy, the court should disregard the reimbursement by Founders to appellant inasmuch as Great American's policy fails to mention medical insurance carriers but only mentions *automobile* medical payments insurance.

2. It follows that appellant's unreimbursed medical expenses are still $6,998.64. This amount exceeds the amount collectible under USAA's policy and therefore Great American's obligation arises since, by the terms of its other insurance clause, it is obligated to pay all excess over other valid and collectible automobile medical payments insurance.

3. The word "collectible," at least under one interpretation suggested by appellant, means "collectible in fact."

4. Translating this to the policy of Great American, the relevant provision would read: "[T]he insurance with respect to a . . . non-owned automobile shall be excess insurance over any other valid and [collectible in fact] automobile medical payments insurance."

5. The "collectible in fact" payment by USAA is $1,200. Construing Great American's policy literally, Great American must pay the $6,998.64 medical expenses of appellant which is in excess of $1,200 (the collectible in fact amount) up to Great American's coverage limit of $5,000.

Appellant cites no authority to support her argument that "collectible" actually means "collectible in fact" and our research has failed to uncover a case so holding. Her contention is that the obligation of the excess insurer arises when the insured's medical expenses exceed the reimbursement actually received from the primary insurer irrespective of the fact that the primary coverage has not been exhausted. She urges us to disregard the fact that she has been reimbursed in full for her medical expenses and that the coverage of the primary insurer has not been exhausted.

## DISCUSSION

It is well established law that "In cases of uncertainty . . . the language of a contract should be interpreted most strongly *against the party who caused the uncertainty to exist.*" (Civ. Code, § 1654; italics added.) "If the insurer uses language which is uncertain any *reasonable*

*doubt* will be resolved against it; if the doubt relates to extent or fact of coverage . . ., the language will be understood in its most inclusive sense, for the benefit of the insured." (Italics added.) (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; see also *State Farm Mut. Auto. Ins. Co.* v. *Johnston* (1973) 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357]; *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)

▆▆▆ Relying on the above rules of contract interpretation, appellant argues that the word "collectible" in Great American's insurance policy is ambiguous and susceptible to two interpretations. She asks: "Does the word 'collectible' in the body of the other insurance clause mean: (1) That [Great American's] obligation becomes effective when the primary insurance policy limits of [USAA] have become uncollectible in fact? or (2) That [Great American's] obligation becomes effective only when *payment* from [USAA] reaches the $5,000.00 limit, even if the *payment* is not collectible in fact?" (Italics added.)

▆▆▆ The clause "valid and collectible insurance" has widespread use in the insurance industry of the United States and has a well established meaning. Generally, the clause refers to insurance which is legally valid and is underwritten by a solvent carrier. Thus, reference to other "valid and collectible insurance" in a pro rata clause of a personal liability policy is directed to a policy which is legal and valid, as distinguished from one which is invalid, as for fraud, or uncollectible, as for insolvency. (*Friedfeld* v. *Royal Indemnity Company* (Fla.App. 1964) 167 So.2d 586, 587-588.) And in an automobile policy medical payments provision reading " 'shall be excess over any other collectible automobile medical payments insurance available to the injured person,' " the word "collectible" means exhaustion of primary coverage. (*Schweisthal* v. *Standard Mutual Insurance Co.* (1964) 48 Ill.App.2d 226 [198 N.E.2d 860, 862].) While no California cases have been found which define the meaning of "valid and collectible insurance" the words are used in the California Insurance Code. For example, Insurance Code section 11580.9, subdivision (d) provides: "Except as provided in subdivisions (a), (b), and (c), where two or more policies affording *valid and collectible* liability *insurance* apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

(Italics added.) This section, which applies to a liability loss, is also applicable to medical reimbursement provisions contained in automobile liability policies. (See Ins. Code, § 11580.9.)

█ In the instant case the undisputed facts are that, as between USAA and Great American, USAA as insurer of the owned automobile is the primary insurer. The liability of Great American, as the excess insurer, does not arise until the limit of the primary insurer's coverage has been exhausted. (*Owens Pacific Marine, Inc.* v. *Insurance Co. of North America* (1970) 12 Cal.App.3d 661, 668 [90 Cal.Rptr. 826]; *Miller* v. *Western Pioneer Ins. Co.* (1965) 237 Cal.App.2d 138 [46 Cal.Rptr. 579]; *Hartford Accident & Indemnity Co.* v. *Transport Indemnity Co.* (1966) 242 Cal.App.2d 90 [51 Cal.Rptr. 168]; *Travelers Indem. Co.* v. *Colonial Ins. Co.* (1966) 242 Cal.App.2d 227 [51 Cal.Rptr. 724]; *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144 [57 Cal.Rptr. 240].)

In general, the liability of an excess insurer is stated in 8 Appleman, Insurance Law and Practice (1942) section 4914, page 400 as follows: "[T]he liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted."

It follows that in the instant case the appellant had total insurance coverage in the amount of $15,798.64 ($5,798.64 was covered and paid by Founders; $5,000 was covered and $1,200 was paid by USAA, and $5,000 was covered, as excess insurance, by Great American). Thus, had her loss exceeded $15,798.64 appellant would have received policy limit payments from each of the three carriers. █ Since we are concerned only with the order in which two insurers, whose liability insurance policies each contain medical payments coverage, are responsible to their assured as primary or excess insurers we look for the answer to Insurance Code section 11580.8 which reads, in part, as follows: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance *and the various coverages therein,*

are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting *the order* in which two or more of such liability insurance policies covering the same loss shall apply, . . ." (Italics added.)

■ "In construing insurance policies, as in construing contracts, the entire policy is to be construed together for the purpose of giving force and effect to each clause." (*General Ins. Co.* v. *Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 426 [51 Cal.Rptr. 462]; see also Civ. Code, § 1641; Code Civ. Proc., § 1858.) "If the insurer uses language which is uncertain any *reasonable doubt* will be resolved against it; . . ." (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423 at p. 437; italics added.) "But in the construction of ambiguous policies the literal terms of the policies themselves carry less weight than the substance of the transaction involved." (*Pacific Indem. Co.* v. *Liberty Mut. Ins. Co.* (1969) 269 Cal.App.2d 793, 798 [75 Cal.Rptr. 559].) ■ In interpreting an insurance policy, "the 'courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed.' " (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641]; see also *Sullivan* v. *Royal Exchange Assurance* (1960) 181 Cal.App.2d 644, 646 [5 Cal.Rptr. 878]; *Allstate Ins. Co.* v. *Shmitka* (1970) 12 Cal.App.3d 59, 67 [90 Cal.Rptr. 399]; *New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81 [237 P.2d 510].)

■ "The words of a contract are to be understood in their *ordinary and popular sense,* rather than according to their strict legal meaning; unless *used* by the parties in a *technical* sense, or unless a *special meaning* is given to them by *usage,* in which case the latter must be followed." (Civ. Code, § 1644; italics added.) "*Technical words* are to be interpreted as usually understood by persons in the *profession or business* to which they relate, unless clearly used in a different sense." (Civ. Code, § 1645; italics added; see also 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 523, p. 446 and citations therein.)

■ In construing the other insurance clause of Great American's policy, we must give due consideration to Great American's status as a secondary, excess insurer. There is no reasonable doubt that, whether in

an "ordinary and popular sense" (Civ. Code, § 1644) or in the sense used in the insurance profession or business (Civ. Code, § 1645), the word "collectible," in the context of an excess insurance clause such as that in the Great American policy, refers to the maximum coverage carried by the primary carrier. If this maximum coverage has not been exhausted, the excess insurer's obligation does not arise. (The excess insurer's "*coverage* shall be excess over *that* of the nonowned vehicle." (*Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App.2d 497, 506 [38 Cal.Rptr. 77]; italics added.)

In the instant case, what appellant was able to claim and receive from USAA was $1,200, but the primary carrier's *coverage* was not exhausted, hence the obligation of Great American, as excess insurer, did not arise. The reason appellant did not collect an additional $3,800 from USAA was not because the *coverage* of that carrier was exhausted, but because the appellant's unreimbursed *loss* was limited to $1,200. And there is still $3,800 worth of valid and collectible insurance in the USAA policy, provided appellant's unreimbursed loss entitles her to claim it.

We find no ambiguity or uncertainty in the other insurance clause of Great American's policy. The uncertainty is caused by appellant's misreading of the clause. She reads "collectible" as if it modified the word "payments" and concludes that the only payment collectible in fact under the USAA policy was $1,200. But the clause refers to "*valid and collectible* automobile medical payments *insurance*" (italics added), and the USAA policy afforded $5,000 worth of valid and collectible automobile medical payments primary *insurance.* Accordingly, the trial court properly found "That [Great American], under its policy, has no obligation to the plaintiff until unpaid medical expenses exceed the limits of the [USAA] policy." In view of this conclusion and the finding that there is no ambiguity or uncertainty in Great American's other insurance clause, the cases heretofore cited setting forth the rules applicable to uncertain language in insurance policies are not applicable to the instant case.

■ We are not persuaded by Great American's argument that double recovery is not favored and that Great American's other insurance clause prohibits double recovery. The cases of *Sullivan* v. *Royal Exchange Assurance, supra,* 181 Cal.App.2d 644, *Allstate Ins. Co.* v. *Shmitka, supra,* 12 Cal.App.3d 59, *Turner* v. *Mannon* (1965) 236 Cal.App.2d 134 [45 Cal.Rptr. 831], *Dodds* v. *Bucknum* (1963) 214 Cal.App.2d 206 [29 Cal.Rptr. 393], *Jones* v. *California Casualty Indem.*

*Exch.* (1970) 13 Cal.App.3d Supp. 1 [91 Cal.Rptr. 726], cited by Great American, do not support the proposition for which they were cited. The first two involve policy limits per person and the last three refer to situations in which a party was seeking to recover twice from the same defendant.

In the instant case, if the owner of the car in which appellant was riding as a passenger at the time of her injury had been insured by Great American and the appellant's parents had been insured by USAA it is entirely possible, in the absence of some other exclusionary provision, that appellant could have recovered her medical expenses twice. The difference would be that Great American's policy would then have been primary and USAA's would have been excess. Great American's other insurance clause referred only to other "automobile medical payments insurance" where USAA's clause includes "medical expense . . . paid or payable" by other types of insurance, including group accident or hospitalization insurance. The fact that Great American's coverage is less restrictive than USAA's furnishes no cause to change Great American's status from excess to primary insurer.

The judgment appealed from is affirmed.

Molinari, P. J., and Elkington, J., concurred.